# Brown *v.* Pittsburgh L. & T. Co.

## *Assumpsit.*

(Decided June 9, 1914. Rehearing denied June 30, 1914.)
65 South. 699.)

1. *Constitutional Law; Insurance; Occupation Tax.*—Construing section 2089 as amended by Acts, 1909, page 337, and Acts, 1911, page 163, in the light of the provisions of section 4556, Code, 1907, it is held that the tax therein imposed is neither a property nor a franchise tax, but is a privilege or license tax and that the statutes herein mentioned are not violative of 14th amendment of the constitution of the United States.

2. *Statutes; Construction; Interpretation.*—A literal interpretation which would defeat the manifest purpose of a statute and permit evasion will not be adopted if any other reasonable construction consistent with said purposes can be given to it.

3. *Insurance; Regulation; Occupation Tax.*—Under section 2089, Code of 1907, as amended by the legislature, the tax there provided for is to be computed upon the premiums collected from residents of this state by foreign insurance companies, whether actually received by them within or without the State, since otherwise the statutes would be evaded by requiring the payment of all premiums at the home office of the company in another state.

APPEAL from Montgomery City Court.

Heard before Hon. GASTON GUNTER.

Action by the Pittsburg Life & Trust Company against Cyrus B. Brown, as Insurance Commissioner, to recover certain money paid under protest. Judgment for plaintiff and defendant appeals. Reversed and rendered.

[Brown v. Pittsburgh L. & T. Co.]

ROBERT C. BRICKELL, Attorney General and T. H. SEAY, Assistant Attorney General, for appellant. The evident purpose of the statutes was to fix a license or privilege tax on all insurance premiums collected in the state of Alabama and the only reasonable construction to be given the statute is that it has reference to the gross amount of premiums paid by residents in the state of Alabama regardless of whether they are paid in the state or remitted directly to the home office. Any other construction would render the statute inoperative as any foreign insurance company could require all premiums to be paid to the home office. A mere change in the phraseology of the statute would not have the effect to change its meaning unless such a legislative intent is clear.—*Bradley v. State,* 69 Ala. 318.

A. G. and E. D. SMITH, and FRANK EWING, for appellee. The premiums to be taxable must be received by the company in the state and those remitted direct to the home office are not subject to the two per cent tax, provided by the last revenue bill.—*M. L. I. Co. v. State,* 87 N. E. 259 s. c. 94 N. E. 111. If the tax is one on property then it was void and unconstitutional under the 14th amendment to the United States Constitution.—117 S. W. 376; 92 N. E. 922; 106 Tenn. 282; 131 Ga. 607; 188 U. S. 385; 129 S. W. 301. If a franchise tax it is violative of section 232 of the Constitution of 1901. If a license tax then it is violative of both the Constitution of the U. S. and the state of Alabama.—*K. C. M. & B. Ry. Co. v. Styles,* in MS.; *Mulford Co. v. Curry,* 125 Pac. 236, and cases cited, 223 U. S. 280; 126 N. W. 53.

THOMAS, J.—Section 2089 of the Code of 1907, as amended by an act approved August 31, 1909 (Gen. &

Local Acts, Sp. Sess. 1909, p. 337), among other things, thus provides:

"Every insurance company, domestic or foreign, doing business in this state, when filing statement as required by section 4556 of this Code shall at the same time pay to the Insurance Commissioner the following amounts, that is to say: Each fire insurance company shall pay one and one-half dollars on each one hundred dollars of the gross premiums, less return premiums, received by it in this state, and every other insurance company shall pay two dollars on each one hundred dollars of gross premiums less return premiums, so received in this state during the year ending the 31st of December next preceding as a tax for doing business in this state," etc.

Section 4 of the Revenue Act, approved March 31, 1911 (Gen. Acts 1911, p. 163. § 4), among other things, provides:

"Every insurance company, except fraternal, doing business in this state, which files a statement as required by section 4556 of the Code, shall at the same time pay to the Insurance Commissioner the following amounts, that is to say: Each fire insurance company shall pay one and one-half dollars on each one hundred dollars of the gross premiums received, less the premiums returned by cancellation, by it in this state, and every other insurance company shall pay two dollars on each one hundred * * * so received in this state, during the year ending on the 31st of December, preceding, as a tax for doing business in this state," etc.

It has been said that the statute from which the last quotation is taken is in effect but an amendment of the statute from which the first is taken (*City of Montgomery v. Royal Ex. Insurance Corporation,* 5 Ala. App.

326, 59 South. 508) ; but whether so to the extent of being an entire substitute for it is immaterial to the consideration before us in the present case, since the two statutes are substantially identical in the particular with which we are here concerned. The question here presented is as to the constitutionality of the statute mentioned, and if constitutional, whether the per cent. of premiums, which, by such statute, the insurance companies therein mentioned are required to pay as a tax for doing business in the state, is to be computed on the premiums collected by such companies from residents of this state, irrespective of whether the cash for such premiums is received by it within or without the borders of the state, or is to be computed only upon such premiums so collected from residents of the state as those the cash for which is actually received by the company within the borders of the state.

The appellee is a foreign or nonresident life insurance company, and during the year 1912 it collected from residents of this state, as premiums on life insurance policies owned by such residents, the aggregate sum of $41,941.30. Of this amount, $24,557.52 was received by the company within the borders of the state, being collected here through banks or other local representatives of the company, and the remainder, $17,-383.78, was received by the company at its home office in Pittsburgh, Pa., being forwarded to it there—the place of payment as fixed in the policies—by the several policy holders through the United States mail.

Under the statute mentioned, the company voluntarily paid to the State Insurance Commissioner the sum of $491.15, being 2 per cent. of the said $24,557.52 of premiums received by it within the state; but the commissioner, adopting a different construction of the statute, demanded the further sum of $347.67, as 2 per cent.

of the said $17,383.78 so collected as premiums from residents of this state, but not received, as stated, within the state. and threatened, if such additional sum were not paid, to enforce the penalties of the statute and debar the company from doing business in the state. Under such duress, the company paid said additional sum to the commissioner, Cyrus B. Brown, the appellant, accompanying the payment with protest and notice to him not to pay the sum into the state treasury, as the company would within 30 days sue for its recovery, which it proceeded to do.

The facts were without dispute at the trial, and the lower court rendered judgment in favor of the insurance company, from which the Insurance Commissioner appeals, assigning as the only error the rendition of this judgment. A review of this action of the court necessitates, under the contentions here made, a consideration of and a decision upon two questions, involving, as said, the constitutionality of the statute quoted and a construction of the meaning of its language in the particulars before mentioned.

It is insisted by appellee that, if the tax provided for by the statute is to be regarded as a tax on property, the statute is void as contravening certain cited sections of both the state and the federal Constitutions; that, if the tax is to be regarded as a tax on the franchises of the corporation, the statute is void as in violation of section 232 of the state Constitution; and that, if the tax is to be regarded as a privilege or license tax, the statute is invalid, because in conflict with the fourteenth amendment of the Constitution of the United States, citing us, in support of the latter proposition, to the following cases: *Mulford Co. v. Curry,* 163 Cal. 276, 125 Pac. 236; *G. & S. I. R. R. Co. v. Adams,* 90 Miss. 559, 45 South. 91; *A., T. & S. F. R. R. v. O'Conner,*

223 U. S. 280, 32 Sup. Ct. 216, 56 L. Ed. 436, Ann.
Cas. 1913C, 1050; *Western Union Tel. Co. v. Kansas,*
216 U. S. 1, 30 Sup. Ct. 190, 54. L. Ed. 355; *Pullman
Co. v. Kansas,* 216 U. S. 56, 30 Sup. Ct. 232, 54 L. Ed.
378; *Harper v. Galloway,* 58 Fla. 255, 51 South. 226;
26 L. R. A. (N. S.) 794, 19 Ann. Cas. 255; *Eviermann
v. City of Milwaukee,* 142 Wis. 606, 126 N. W. 53, 27
L. R. A. 1985.

We are clear that the tax imposed by the statute is
neither a property tax nor a franchise tax, but is a
privilege or license tax, and that the statute is not in
violation of the fourteenth amendment to the federal
Constitution, as contended. It is unnecessary to re-
view the mentioned numerous cases cited by appellee's
counsel in support of their views, or to engage in any
general discussion of the subject, since the following
cases, when examined, will be found not only to sus-
tain our conclusion and to state fully the grounds of
it, but to distinguish this case from the mentioned
cases so cited by appellee: *City of Montgomery v.
Royal Exchange Assurance Co.,* 5 Ala. App. 327, 59
South. 508; *So. Ry. Co. v. Greene,* 160 Ala. 396, 399, 49
South. 404; *So. Ry. Co. v. Greene,* 216 U. S. 400, 30
Sup. Ct. 287, 54 L. Ed. 536, 17 Cas. 1247; and cases
cited in these several cases; *Capital City Water Co. v.
Board,* 117 Ala. 303; 23 South. 970; *Western Union
Tel. Co. v. State Board,* 80 Ala. 273, 60 Am. Rep. 99;
*State v. Parker,* 5 Ala. App. 235, 59 South. 741; *Kansas
City R. R. Co. v. Stiles,* 62 South. 734; *Goldsmith v.
Mayor of Huntsville,* 120 Ala. 182, 24 South. 509; *Saks
v. Mayor of Birmingham,* 120 Ala. 190, 24 South. 728;
*Phoenix Cooperage Co. v. State,* 118 Ala. 143; 22 South.
627, 72 Am. St. Rep. 143.

As to the remaining question—that is, as to the prop-
er interpretation of the statute on the point as to wheth-

er under it the privilege or license tax so exacted by it is to be computed upon premiums collected from residents of this state, regardless of the place where the cash therefor is actually received by the insurance company, whether within or without the state, or is to be computed upon only such premiums as those the cash for which is received within the state—we may say that it is our opinion that a correct construction of the stat-. ute leads to the conclusion that the former, and not the latter, is a correct statement of the meaning and intent of the statute.   While it is true that the statute says that the computation shall be made upon "premiums received in this state," yet we are not to be governed by the literal expression of the statute, when to do so would be to wander entirely from the obvious intention of the Legislature.

In *Thompson v. State*, 20 Ala. 54, it was well said by our Supreme Court:

"The inartificial manner in which many of our statutes are framed, the inaptness of expressions frequently used, and the want of perspicuity and prescission not infrequently met with, often require the court to look less at the words than at the context, the subject-matter, the consequence and effects, and the reason and spirit of the law, in endeavoring to arrive at the will of the lawgiver."

A literal interpretation which would defeat the manifest purposes of the statute and permit evasions will not be adopted, if any other reasonable construction consistent with such purpose can be given to it.— *Cociola v. Wood-Dickerson Co.*, 136 Ala. 536, 33 South. 856; *Davis v. Thomas*, 154 Ala. 279, 45 South. 897; *Green v. McGhee*, 37 Ala. 166; *Walker v. Ball*, 39 Ala. 302; *Chase's Case*, 43 Ala. 312; *Smith v. Ivey*, 48 Ala. 51; *Commissioners' Court v. Rather*, 48 Ala. 449;.

*Smith v. Jones,* 50 Ala. 469; *Steele v. State,* 61 Ala. 218; *Ex parte Joice,* 88 Ala. 133, 7 South. 3; *Powers v. State,* 129 Ala. 128, 29 South. 784; *Moss v. Mosely,* 148 Ala. 192, 41 South. 1012; *City of Birmingham v. So. Ex. Co.,* 164 Ala. 539, 51 South. 159; *Fulton v. State,* 171 Ala. 578, 54 South. 688; *Lynn v. Broyles Fur. Co.,* 3 Ala. App. 639, 57 South. 122.

"A thing may be within the letter of a statute and not within the meaning or spirit, or it may be within the clear meaning and spirit and not within the letter."

See *Birmingham v. So. Ex. Co., supra,* and *Fulton v. State, supra,* where the rules of construction are fully stated and amplified.

Under the letter of the statute here under consideration, if the appellee insurance company should, through any of its agents in this state, receive within the borders of this state payment from any nonresident of any annual premium on a policy that had been purchased and was still owned in another state, such premium would form part of the sum made the basis for the computation of the privilege or license tax so levied by the statute. We are clear, however, that such was not the legislative aim, as well as we are clear that it was likewise not such aim to exclude from the computation premiums collected from resident policyholders cash for which was not actually received within the state, but only through the mails by the company at its home office outside of the state. The statute expressly declares that the tax levied by it is levied as a tax "for doing business in this state," and its evident design is to proportion and regulate the amount levied according to the extent to which the privilege taxed—"doing business in this state"—had been enjoyed, 117 Ala. 311, 23 South. 970; *Lott v. Ross,* 38 Ala. 156; *Western Union Tel. Co. v. Board,* 80 Ala. 279, 60 Am. Rep. 99; *State v.*

*Parker,* 5 Ala. App. 235, 59 South. 741.  If the statute is to be construed as intending to make the basis for the computation of the tax levied only such premiums from resident policyholders as are actually received by the company with the state, then it lies within the power of the company to entirely defeat the tax and the purposes of the statute by hereafter requiring all policyholders in this state to remit their premiums to the home office of the company—the place of payment fixed by the terms of all the policies, so the agreed statement of facts in this case declares, and so we know to be the common custom of common knowledge obtaining in such matter.

We are not to suppose that the Legislature, in passing the statute, intended to do a useless thing, and we decline therefore to adopt the construction contended for by the appellee's counsel, notwithstanding they are sustained in such construction by the Supreme Court of Ohio, which, in the case of *Mutual Life Ins. Co. v. State,* 79 Ohio St. 305, 87 N. E. 259, had under consideration a statute very similar in all respects to ours. We are not impressed with the reasoning of that case.

It follows from what we have said that the judgment of the lower court must be reversed, and one will be here rendered for the appellant.

Reversed and rendered.